### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| STACEY PERKINS ROCK and PAUL ROCK, *Plaintiffs,* v. AMERICAN AIRLINES, INC., a corporation, *Defendant.* | Case No. 24-cv-4833 **JURY TRIAL DEMANDED** |

### COMPLAINT

Plaintiffs, STACEY PERKINS ROCK and PAUL ROCK, by their undersigned attorneys, hereby file this Complaint and Jury Demand against Defendant, AMERICAN AIRLINES, INC., and allege the following:

**Jurisdiction, Parties, and Venue**

1. In this action, Plaintiff Stacey Perkins Rock seeks recovery of compensatory damages for significant bodily injuries—including several broken bones—and emotional injuries, which she sustained while a passenger on an international flight operated by Defendant American Airlines, Inc. from Paris, France to Chicago, Illinois as AA Flight 151 on June 13, 2022. Plaintiff Paul Rock, Stacey's husband, brings a loss-of-consortium claim against Defendant American Airlines, Inc.

2. Plaintiff, Stacey Perkins Rock, is an individual who is an American citizen living in the country of France.

3. Plaintiff, Paul Rock, is an individual who is an American citizen living in the country of France.

4. Defendant, American Airlines, Inc. ("American"), a Delaware corporation, is and was at all times relevant, doing substantial business in Chicago, Illinois, including on the subject flight AA Flight 151 which injured the Plaintiffs. Chicago O'Hare International Airport (ORD) is one of American's main hubs in the United States. Indeed, in 2023 alone, American carried more than 20 million passengers through ORD. *See* https://news.aa.com/multimedia/fact-sheets/default.aspx#gallery1-5. American has a permanent presence, place of business, and ticketing office at ORD in Chicago, Illinois, and operates daily flights in and out of Chicago, along with numerous other airports in Illinois.

5. This Court has federal question jurisdiction under 28 U.S.C. § 1331. This action arises under an international treaty, namely the Convention for the Unification of Certain Rules Relating to International Transportation by Air, concluded at Montreal, Canada, on May 28, 1999, commonly known as the "Montreal Convention."

6. Venue is proper in this judicial district pursuant to Article 33(1) of the Montreal Convention and pursuant to 28 U.S.C. § 1391(b)(2).

**Factual Background**

7. Defendant American is a common carrier engaged in the business of transporting passengers for hire by air and, in furtherance thereof, operates regularly scheduled international flights which transport passengers daily to and from both Paris, France and Chicago, Illinois via Paris Charles de Gaulle (CDG) and Chicago O'Hare (ORD).

8. As a common carrier, American owes the highest duty of care for the safety of its passengers.

9. Based on its own experience and federal guidance, American and its employees knew that turbulence-related accidents are the most common cause of injuries to commercial airline passengers. Indeed, the National Transportation Safety Board has repeatedly warned of the need for commercial airline carriers such as American to protect their aircraft and their passengers from turbulence-related harm, including most recently in a 115-page Safety Research Report adopted 10 months before AA Flight 151. *See* NTSB Preventing Turbulence-Related Injuries in Air Carrier Operations Conducted Under Title 14 Code of Federal Regulations Part 121, Safety Research Report, NTSB/SS-21/01, adopted Aug. 10, 2021.

10. In furtherance of its operations as a common carrier, Defendant American employs pilots, flight attendants, and other employees to warn and prepare passengers to fasten seatbelts ahead of turbulence.

11. American's flight attendants are also required to walk the aisle and visually confirm that passengers have fastened their seatbelts.

12. On or about June 13, 2022, American operated an international flight, AA151, from CDG in Paris, France, to ORD in Chicago, Illinois (the "Flight").

13. Plaintiff Stacey Perkins Rock was a ticketed passenger aboard the Flight.

14. American and its employees, including American's pilots, were required to monitor for inclement weather, review weather reports, communicate effectively with Air Traffic Control, and take evasive action to avoid dangerous weather and turbulence due to the foreseeable risk of bodily harm to American's passengers.

3

15. The weather was known to American and its pilots to be inclement and it was known that tornadoes were in the Chicago area, as shown in the radar return, below:





16. Despite American's knowledge of dangerous and inclement weather in Chicago and near ORD, and the foreseeable harm to American's passengers including Plaintiff Stacey Perkins Rock, American and its employees, including American's pilots, proceeded to the scheduled destination of ORD and the Flight encountered extreme turbulence.

17. Due to the extreme turbulence, Plaintiff Stacey Perkins Rock was physically thrown out of her seat, landing with her feet over the seat in front of her.

18. As a direct and proximate result of this Accident, Plaintiff Stacey Perkins Rock has suffered multiple fractures to her ribs and clavicle and severe bruising to her torso, which resulted in severe pain and suffering, mental anguish, and impaired her daily life activities.

19. Since this Accident, Plaintiff's clavicle has not healed fully. She is still unable to wear a backpack or purse or other bag with straps over the injured area without pain and discomfort.

20. American's decision to fly the aircraft to ORD despite the known hazardous weather conditions and its failure to warn Plaintiff Stacey Perkins Rock to fasten her seatbelt and to visually check that Plaintiff's seatbelt was properly fastened in light of the severe weather and turbulence constitutes an "Accident" under Article 17 of the Montreal Convention as the Plaintiff was injured by an unexpected or unusual event or occurrence external to her person and not by her own internal reaction to the ordinary operation of the aircraft.

21. American's disregard for passenger safety and its failure to warn and direct passengers to fasten their seatbelts ahead of the severe weather and turbulence proximately caused the Accident and Plaintiff's resulting injuries.

22. As a result of the Accident, Plaintiff has fractured her ribs and clavicle, had severe bruising to her torso, suffered severe pain and suffering, disability, loss of enjoyment of life, mental

anguish, a fear of flying, impairment of her daily life activities, medical expenses, and her injuries are continuing.

## COUNT I
### (Montreal Convention)
**Plaintiff Stacey Perkins Rock v. Defendant American Airlines, Inc.**

23. Plaintiff incorporates her allegations 1 through 22 above as though set forth fully herein.

24. As a common carrier, Defendant American Airlines owes a legal duty to provide its passengers, including the Plaintiff, with a reasonably safe flight that is free from extreme turbulence due to the foreseeable risk of bodily harm resulting from extreme turbulence. American and its employees, including American's pilots and flight attendants, are also duty-bound to protect their passengers from dangerous weather events and extreme turbulence by communicating effectively with one another, monitoring weather information and data, warning passengers to fasten their seatbelts, visually confirming that passengers have properly fastened their seatbelts, and taking evasive action to avoid in-flight emergencies and dangerous weather.

25. As a common carrier, Defendant American Airlines is also required to properly train its employees, including its pilots and flight attendants, about how to safely respond to dangerous weather events, including turbulence, to safeguard passengers from bodily injuries and death.

26. American and its employees and agents failed to:

a. Provide commercial air transportation in a safe manner by avoiding dangerous weather conditions and extreme turbulence;

b. Safely transport Plaintiff and protect her against physical injury due to turbulence;

c. Properly train American's pilots regarding identifying, responding to, avoiding, and navigating dangerous and inclement weather and extreme turbulence;

d. Operate the accident aircraft in a safe manner;

e. Take evasive action and divert to another airport in the face of dangerous and inclement weather;

f. Exercise proper crew coordination, crew resource management, proper monitoring of weather information and data, and proper communication between the pilots and flight attendants, and pilots, flight attendants, and passengers;

g. Training on safe aircraft operation, responding to an emergency weather event and dangerous and inclement weather, crew coordination and crew resource management, situational awareness, task allocation, and decision-making skills;

h. Properly monitor weather information and follow a safe landing profile during the approach to landing;

i. Identify, react, mitigate, and warn passengers of a critical emergency situation including warning passengers to fasten their seatbelts and visually assuring that all passengers were properly seatbelted;

j. Initiate proper emergency actions;

k. Restrict or suspend operations of the Flight in the face of the hazardous weather conditions and inclement weather to avoid subjecting American's passengers, including the Plaintiff, to severe bodily harm from extreme turbulence;

l. Otherwise take appropriate action to protect the Plaintiff from bodily harm.

27. As a result of the foregoing acts or omissions by American and its employees and agents, including American's pilots and flight attendants, Plaintiff suffered significant personal injuries, including multiple rib fractures and a fractured clavicle, severe bruising to her torso, pain

7

and suffering, disability, impairment of her life activities, mental anguish and a fear of flying, medical expenses, and other injuries and damages to be proven at trial.

28. The above acts or omissions by American and its employees and agents, including American's pilots and flight attendants, which proximately caused Plaintiff's injuries were unexpected and unusual events or happenings external to the Plaintiff and therefore each and every act or omission constitutes an Accident under Article 17 of the Montreal Convention.

29. Under Articles 17 and 21 of the Montreal Convention, American is liable for all injuries that Plaintiff has sustained and all damages flowing from those injuries.

WHEREFORE, the Plaintiff, Stacey Perkins Rock, respectfully requests that the Court enter judgment in her favor and against the Defendant, American Airlines, Inc., and award her all damages available under the law, her court costs in this matter, and such other relief as the Court deems just and proper.

## COUNT II
### Plaintiff Stacey Perkins Rock v. Defendant American Airlines, Inc.
### (Negligence)

23. Plaintiff incorporates her allegations 1 through 22 above as though set forth fully herein.

24. As a common carrier, Defendant American Airlines owes a legal duty to provide its passengers, including the Plaintiff, with a reasonably safe flight that is free from extreme turbulence due to the foreseeable risk of bodily harm resulting from extreme turbulence. American and its employees, including American's pilots and flight attendants, are also duty-bound to protect their passengers from dangerous weather events and extreme turbulence by communicating effectively with one another, monitoring weather information and data, warning passengers to

fasten their seatbelts, visually confirming that passengers have properly fastened their seatbelts, and taking evasive action to avoid dangerous weather.

25. As a common carrier, Defendant American Airlines is also required to properly train its employees, including its pilots and flight attendants, about how to safely respond to dangerous weather events, including turbulence, to safeguard passengers from bodily injuries and death.

26. American and its employees and agents were negligent in one or more of the following respects:

   a. Failing to provide commercial air transportation in a reasonably safe manner by avoiding dangerous weather conditions and extreme turbulence;

   b. Failing to safely transport Plaintiff and protect her against physical injury due to turbulence;

   c. Failing to properly train American's pilots regarding identifying, responding to, avoiding, and navigating dangerous and inclement weather and extreme turbulence;

   d. Failing to operate the accident aircraft in a reasonably safe manner;

   e. Failing to take evasive action and divert to another airport in the face of dangerous and inclement weather;

   f. Failing to exercise proper crew coordination, crew resource management, proper monitoring of weather information and data, and proper communication between the pilots and flight attendants, and pilots, flight attendants, and passengers;

   g. Failing to properly train on safe aircraft operation, responding to an emergency weather event and dangerous and inclement weather, crew coordination and crew resource management, situational awareness, task allocation, and decision-making skills;

h. Failing to properly monitor weather information and follow a safe landing profile during the approach to landing;

i. Failing to identify, react, mitigate, and warn passengers of a critical emergency situation including warning passengers to fasten their seatbelts and visually assuring that all passengers were properly seatbelted;

j. Failing to initiate proper emergency actions;

k. Failing to restrict or suspend operations of the Flight in the face of the hazardous weather conditions and inclement weather to avoid subjecting American's passengers, including the Plaintiff, to severe bodily harm from extreme turbulence;

l. Otherwise failing to take appropriate action to protect the Plaintiff from bodily harm.

27. As a result of the foregoing negligent acts or omissions by American and its employees and agents, including American's pilots and flight attendants, Plaintiff suffered significant personal injuries, including multiple rib fractures and a fractured clavicle, severe bruising to her torso, pain and suffering, disability, impairment of her life activities, mental anguish and a fear of flying, medical expenses, and other injuries and damages to be proven at trial.

28. The above negligent acts or omissions by American and its employees and agents, including American's pilots and flight attendants, proximately caused Plaintiff's injuries.

29. American is liable for all injuries that Plaintiff has sustained and all damages flowing from those injuries.

WHEREFORE, the Plaintiff, Stacey Perkins Rock, respectfully requests that the Court enter judgment in her favor and against the Defendant, American Airlines, Inc., and award her all

damages available under the law, her court costs in this matter, and such other relief as the Court deems just and proper.

## COUNT III
### Plaintiff Paul Rock v. Defendant American Airlines, Inc.
### (Loss-of-Consortium)

23. Plaintiff Paul Rock incorporates his allegations 1 through 22 above as though set forth fully herein.

24. At all times relevant, Plaintiff Paul Rock was lawfully married to Plaintiff Stacey Perkins Rock.

25. Plaintiff Paul Rock's wife, Stacey Perkins Rock, was seriously injured as a result of American's acts or omissions on AA Flight 151, including multiple rib fractures and a fractured clavicle, severe bruising to her torso, pain and suffering, disability, impairment of her life activities, mental anguish and a fear of flying, medical expenses, and other injuries and damages to be proven at trial.

26. American is liable for all injuries and damages to Paul Rock's wife, Stacey Perkins Rock.

27. As a result of the significant injuries to his wife, Plaintiff Paul Rock has been deprived of his wife's support, society, and companionship.

28. For the reasons stated, American and its employees and agents, including American's pilots and flight attendants, are liable to Plaintiff Paul Rock for his loss-of-consortium.

WHEREFORE, the Plaintiff, Paul Rock, respectfully requests that the Court enter judgment in his favor and against the Defendant, American Airlines, Inc., and award him all damages available under the law, his court costs in this matter, and such other relief as the Court deems just and proper.

## JURY TRIAL

Plaintiffs demand a jury trial on all issues so triable.

June 11, 2024　　　　　　　　　　Respectfully submitted.

By: /s/ *Austin Bartlett*
Austin Bartlett (ARDC No. 6273427)
**BartlettChen LLC**
77 W. Wacker Drive, Suite 4500
Chicago, Illinois 60601
(312) 624-7711
austin@bartlettchenlaw.com

*—and—*

Michael S. Miska (PHV forthcoming)
Cynthia M. Devers (PHV forthcoming)
**Devers Miska Law**
One Bala Plaza, Suite 635
Bala Cynwyd, Pennsylvania 19004
(215) 714-4030
mmiska@dmllc.law
cdevers@dmllc.law

*Counsel for Plaintiffs*